A different panel, which consists of Judge Cabranes, Judge Walker, and Judge Carney, who has joined us. And I understand from the clerk that the one case to be argued, Liang v. Zee, is ready to be heard. Good afternoon, Your Honors. May it please the Court, my name is Jean Wang, the attorney for the appellant, Gary Liang. This is a civil rights action. The events that transpired started in 2007. My client focused on that first. My understanding is that this appeal is focused on his arrest at the airport, right? Exactly. And whether the officers were entitled to qualified immunity. Exactly. He was coming back from a flight. He was coming back from China on an international flight, arriving at JFK. And immediately, when he approached Customs, Customs walked him to another room at the airport. And there, the NYPD officers, specifically from the 109th Precinct out of Queens, New York, were there waiting for him. They were accompanied by Customs border protection agents, weren't they? The Customs agent escorted him to that room. Escorted my client to that room. Did he have his bags at that point? Not yet. Not yet, because he didn't even clear Customs at the time. And he was escorted to that room, where the NYPD officers were there waiting for him. And the NYPD officers took his passport, and then they escorted him to the baggage claim area to claim his baggage. And then they conducted the search of the baggage, and they arrested him, all at the airport. But there was a Customs person with him at that time. Right. The Customs person didn't do the search. The Customs person was there. Right. The entire time, there was a Customs agent that was present. Right. Right. But they were acting at the behest of the NYPD officers. I mean, the NYPD officers were primarily there to arrest my client and seize . . . We know that if a Customs agent searches the bag at the request of the police, that's okay. Exactly. But in this case, it was NYPD officers with Customs just standing by. The only question really is, was the law clear that that was improper? That is the issue, because the district court pretty much carved out a new exception for a warrantless search by NYPD state, local officers, that they can conduct a search of an international traveler at the airport. Haven't we said that the validity . . . That might have been dead wrong, but that's not the issue before us. The issue before us is whether the law was clearly established at that time, that they couldn't do that. The law is clearly established. I mean, the Supreme Court stated . . . The Supreme Court in a 1979 case, Torres v. Com of Puerto Rico, where Puerto Rico had a local law created, Public Law 22, that allowed police officers to conduct a border search at the airport. The Supreme Court struck down that case, saying that Customs searches, border searches, can only be conducted by the federal government. This is a sovereign authority. That still doesn't cover it, because there, presumably they delegated to the police, general delegation of the police, to do border searches. This is an individual specific border search, right? With the police in the company of the Customs agent, and the police are doing the search, but the agent is there. You don't have a case that says that that's unlawful, prior case. Actually, it is new precedence in this circuit. What? In this circuit. It's new precedent. Yes, I don't know of a . . . Right, that is the point. That is the point. That's what the other side is saying here. That is the point. The district court relies on out-of-circuit cases, but with the out-of-circuit cases, it's either because Customs is using their authority, it's Customs related, or it's by another federal agency, like the FBI. Whereas here, the search was done solely to obtain the non-city defendant's laptop from my client. You're talking about the constitutional merits of the search. That's different from whether or not the law prior to the search was clearly established that what the police were doing was wrong, with a Customs agent present. Well, local police officers know that they can't conduct a search at the airport. How do you know they know that? They know they can't go by themselves, but the question is when you're accompanied by a Customs officer, and the Customs officer . . . If the Customs officer had taken him to the police and said, here he is, you're his bags, and then the Customs officer had left, that would be a different story. The police would say, oh, we've got to . . . are we doing this now? We don't have the Customs officer with us. So under those circumstances, I think maybe some of the cases you're referring to might make sense. But that's the issue, that this was dismissed by summary judgment. There are clearly genuine issues of material fact at dispute as to the Customs agent's involvement, how involved was the Customs agent, where was the Customs agent . . . What kind of authority did the police and the Customs agent . . . What kind of cooperation was occurring between the two parties? I mean, those are genuine issues of material fact that the district court acknowledges. But the district court gave qualified immunity to the police officer, despite the fact, saying . . . asserting that there . . . It wasn't clearly established when, within the district court's own decision, the district court acknowledges that it's beyond cavill that a police . . . A local police officer cannot conduct a border search. And . . . And that Customs agent can't act as a lackey for a local police precinct. Those are two bags and the Customs agent is there and the policeman is there and the policeman says, you take that bag, I'll take this bag. We've got to save time. And they both search under those circumstances. But then the Customs agent would have their own authority, based on their own reasons, for national security or such. Whereas in this case . . . The policeman could say, we want to . . . The law is pretty clear. If the police have a regular law enforcement issue here, they're searching for evidence. They could tell the Customs officer, we're searching for evidence. Do a border search. And if the Customs officer does a border search, that's fine. That's not what happened here. I understand that. But I'm saying that . . . He's also part of that group. But shouldn't the district court have fleshed out the facts first so that we understand the exact circumstances of this case before asserting that . . . Unless the district court can take the facts in the light most favorable to your client and still make a ruling. There's no question about the agent . . . the officer being there, is there? The Customs officer being there. The presence alone was not enough to arrive at that conclusion. I mean . . . Unless you're saying that. Well, I mean . . . Could I . . . Tell me the case that says that. Prior case. There's no prior case on it. The prior case goes back to the Supreme Court's statements in Torres v. Com of Puerto Rico, 442 U.S. 465, back from 1979. That the authority of the U.S. to search the baggage of arriving international travelers is based on its inherent sovereign authority. And that a border search . . . And the Second Circuit . . . Your Honors, in U.S. v. Muke, 1982. That the right of the United States to conduct border searches is based on its sovereign authority. That it's the Customs agents that have the authority to search. There are cases out of Circuit that allow Customs agents to cooperate with DEA or FBI, other federal agencies. Which is in the situation before us. So, just because . . . I mean, because it never . . . Because it never happened . . . That's reasonable to know that . . . That it doesn't happen. That they're not supposed to. That local . . . There are no cases that local police officers are searching at the international airport. Because it doesn't happen. Because police officers know that it shouldn't happen. It's so basic and reasonable. And the District Court acknowledges that. That it's beyond the bill. That it's so basic that it hasn't been said before. Okay. Thank you. Thank you, Your Honor. Your client is a zealous advocate. I hope that's a compliment. It is. Met as a compliment. May it please the Court. My name is Yasmin Zainalbai. And I represent the city defendants, appellees, in this action. I'll go straight to the qualified immunity question. I want to note that first, the facts are even stronger in terms of the search than appellant acknowledges. Actually, in the complaint, the only allegation was that the luggage was searched by a customs officer alone. On summary judgment, it's undisputed that the police officers and the customs agent searched the luggage together. So it's not even that the officers searched the luggage while the customs agent stood by. It's undisputed that the three of them searched the luggage together. The case law at the time made clear that non-customs officials could come under the border search exception. But the law as— Would you do us the favor, or do me the favor, of giving me a timeline here? So you have a search at the airport, and you also have a search at the 109th Precinct, for which I have special affection. This is my home precinct once upon a time. So explain to us what happened here. Sure. So from what the record shows, Liang landed at JFK Airport. He was stopped as he tried to pass through customs. A customs agent brought him to a room where Detectives Zee and Shim were waiting. The customs officer handed Liang's passport over to the officers, who then walked— who asked him, do you have luggage? Do you have any checked baggage? And he said yes. They walked him over. It's unclear at this point whether the same customs agent accompanied them on the walk. They walked over to the customs area, picked up the bag, and at that point the next thing that happens is customs and the two officers search the luggage together. Then they went to the precinct. I should say that there was a separate search and seizure claim as to the search at the 109th Precinct. The district court actually found that that claim survived summary judgment, but Liang chose to voluntarily dismiss that surviving claim and take this appeal immediately. So there's no surviving claim out of that search at the 109th Precinct. Could you step aside from the qualified immunity question for a minute and address the concern that's been raised by the plaintiff about the district court's reliance on certain police documents that appear to be internal to the police department, the DD-5s, the arrest reports, and complaint reports? I think that the district court was relying on them to show that, as I understand it, that those statements were actually made by Ms. Tan to Detective Z. But those reports are internal documents. They're not documents of public record. Why are they documents that the district court was entitled to rely on here? Some of them were not referred to in the complaint. Rule of Evidence 201B2 says you can judicially notice documents where the facts can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Here, Mr. Liang was complaining that this was fabricated, in essence. So why was it appropriate for the district court to look at those documents and take them into consideration in its analysis? Sure. I think the district court considered two different categories of documents, some which it found to be incorporated by reference and some which it found to be appropriately considered because they could be judicially noticed. In our brief, we actually also make that distinction. So first, as to the documents that the district court found to be incorporated by reference, those were documents that were specifically referenced in the complaint. They need to be relied on in the complaint, not just referenced, in order for the district court to look at them. Isn't that correct? That's right. And Liang did rely on them. So, for example, as to the June or July 2007 criminal complaint, he specifically said in his complaint that defendants issued a complaint against plaintiffs based on statements by defendant Tan. The purpose of the doctrine of incorporation by reference is to prevent the sort of result that Liang advocates for here, is where he asserts that. He relies on it in his complaint, but then he says everything in that complaint is false, but also don't look at it. That can't stand. That's the reason for a doctrine such as that set forth in Chambers v. Time Warner. The basis for his complaint, as I understand it, was that these were false statements made to the detective and maybe even done in a collaborative way. And so it was unusual and maybe inappropriate in the circumstance, especially for internal to the police department documents, for him to take notice of it and rely on them as he did, for the truth that those statements were in fact made to the detective. Isn't that somewhat out of the ordinary? And in that circumstance, one could question whether it's appropriate to rely on them? Well, what Liang is advocating for is the court accepting that everything that Tan said was false without actually having any access to looking at what she said. The district court didn't necessarily look at them and say that everything she said was true or accurate. It looked at it for the purpose of determining whether there was probable cause and didn't necessarily say everything that Tan says in this complaint is true, but looked at it for the purpose of was there a probable cause for the arrest based on what she said. But where part of the allegation is that Z and Tan were in cahoots in generating statements that would allow the arrest on a false basis, it seems inappropriate to rely on them as even establishing probable cause potentially. I think even if this court were to find that inappropriate, on the face of the complaint itself, there was probable cause for the arrest. So while we do think it was appropriate for the court to look at that document, for example, the first order of protection that Liang actually seems to quote, he knows the actual contents and tries to argue exceptions under the order of protection. Certainly it would be appropriate for the court to look at the rest of the language. But taking a step back, as to the criminal complaint, we think it was appropriate for the court below to look at it. But even if this court were to disagree with that, on the face of the complaint itself, what Liang says is that Tan, I recognize that Tan made a complaint against me, and I was arrested as a result. Even on the face of that, that's sufficient for probable cause for the arrest. Is it the city's position that it's always appropriate for the district court to look at DD-5s or complaints that are internal to the NYPD in a false arrest case? We wouldn't take that position, and actually here, I wouldn't go so far. And actually here, the DD-5s come under the category of documents that were judicially noticed, and we actually don't rely on those here. We didn't take a position as to whether it was appropriate for the court to do so or not. But in our brief, we did not rely on any of those documents. As to protective orders, those go in a different category. Is that correct? So those go into a category of documents that were properly incorporated by reference. Liang actually cites to language in those documents, and he tries to rely on an exception that he thinks is in that order of protection. Certainly the court should be able to look at the actual language of that. What Liang keeps trying to do is saying everything in all these documents is false, but the court has no right to look at them. That cannot stand. Thank you. Can you help me again trying to understand this record? I understand that the amended complaint asserts 13 causes of action against approximately 19 defendants. Is that right? That's correct. Now aside from the claims that have been dismissed with prejudice, are there any claims that, in your view, have been abandoned by Liang on appeal? He, that have been abandoned. Yeah, well, he... Well, there's the equal protection claim, right, against the city defendants. That's correct. He didn't seem to raise that on appeal. That's abandoned, in your view. I agree, yes. That's abandoned. And there are also the... It's a claim under Section 1983, right? Yes. There are the false arrest claims, as well as the Monell claim. Right. So the Section 1985, rather, Section 3, that state officials conspired to violate Liang's constitutional rights, that's abandoned, in your view. We didn't see that as abandoned. We think that Liang failed to plead the elements of that claim, but we did not see it as abandoned. Was it pursued here? We... Put it another way, the same question. Is it before us? The... The Section 1985... 3 claim. 3. We understood it to be pursued here. There's a state law claim for tortious interference of contract, right? Yes. We did not see the state claims. This is being pursued on appeal. So what are the claims... So we can be clear, then. The claims that are before us are the arrest, probable cause for the arrest. Yes. And the search. I'm talking about the first one. Yes. And the search. So those two. Then what about the next incident? So the next arrest took place at the store. The store. There was a protective order. There was a protective order. And that's before us. We understood that to be before this court as well. As to that allegation, that false arrest claim, Tan's employees were in her store. I understand. I just wanted to get a checklist. Sure. So we're clear on the claims. So we understand there to be three false arrest claims. Yep. A civil RICO claim. A RICO conspiracy claim. The Section 1985. 3 claim. A Monell claim. And then as to the search and seizure summary judgment claim, we saw that as being limited to one search, which is the luggage at JFK. Okay. So that's a partial summary judgment on that one. No, I'm sorry. What were you just saying to Judge Walker? That there were multiple search and seizure claims that were raised. The district court dismissed some of them, but allowed two of them to survive. Liang voluntarily dismissed those. The only search and seizure claim that Liang chose to appeal was the grant of qualified immunity for the JFK luggage search. And the three arrests for probable cause, and then there's a civil RICO, a RICO conspiracy, the 1985 claim, the Monell claim, is left. That's right. Okay. And we included all those in our brief. Yep. Let me ask you about this task force at the airport. Was there a joint task force in effect when this first took place? What was the year in which? This goes back quite a ways. So what year was that? The search took place in 2007. 2007. And our cases from before 2007 seem to have required that there be some sort of delegation of authority from the federal agencies to the state agencies, right? In fact, all the cases requiring the delegation of authority are from the Ninth and Sixth Circuits. From the Ninth and? Sixth. So the majority of the cases cited by appellant and by the district court are from the Ninth and Sixth Circuit. The closest case or the most instructive case from this circuit is called United States v. Irving, and it's a 2006 case. And to be clear, the search in that case was conducted by a customs agent. And in that case, effectively there is a tip from law enforcement to customs saying someone is reentering the country. He's a suspect in a crime. Please stop him and conduct a search of his luggage. In the criminal case, that criminal defendant moved to suppress the evidence from that search. And the court found, and he said it was not proper for customs to act on this tip from law enforcement. And this court found that the validity of a border search does not depend on whether it's prompted by a criminal investigative motive. In that case, the custom official search was proper even though the motive was to further a law enforcement criminal investigation. That's really the only case in which the circuit... ...can really assist us where the search is by the police and the customs agent. No, certainly, and there's no clear case. There's no case prohibiting this type of search. Plus, a reasonable law enforcement agent could look at that case and say, you know, it was reasonable for customs to act on a tip. A reasonable agent could think, if I'm standing next to the customs agent and participating in the search, that's not unreasonable. And also, there's no case from the circuit prohibiting that. This case has not been... A minute ago, you said it was more than just standing next to him, that the customs agent was also searching. Indeed, and that's undisputed in the summary judgment record and the 56.1 statement. That was an undisputed fact. And even the cases with the joint task force and the delegation of authority, those cases are not from this circuit. And they don't clearly establish what would happen in this situation where perhaps there isn't a... What extent of cooperation is necessary? Perhaps there's not a formal delegation of authority or a formal joint task force, but it's clear that there's some cooperation here.  that addresses that situation. Well, your point is that the Ninth and Sixth have formal agreements in those cases. But here, there is no formal agreement. There's nothing in the Supreme Court and nothing in our case law that says there has to be a formal agreement. That's right. So not only is there nothing from this circuit or the Supreme Court directly addressing it, but even the Ninth and Sixth Circuits don't address this exact situation. What, in your view, is the state of the law regarding the relationship between law enforcement and the customs in situations like this? What kind of agreement, if any, is required? My view of the state of the law is that it's unsettled, that I don't think it's been presented squarely to this court. And even under the Ninth and Sixth Circuits, those cases fall on two opposite ends of a spectrum. There's one end of the spectrum where there's this formal agreement. We're all in this together. And in those cases, the courts have found that law enforcement does come under the ambit of the border search exception. But on the other hand, there is a case called Soto-Soto from the Ninth Circuit in which law enforcement basically acted on its own with no customs agent even present, and the court found that clearly wasn't appropriate. You would say the state of the law was unsettled in 2007 when this search occurred, and it remains unsettled in this circuit, is that right? I've seen nothing that suggested to me that it's been settled since. That seems sort of odd. I mean, I'm glad to know your position and what you're saying, but given the importance of the airports in the Port of New York, it seems incredible that we don't have some sort of agreement in place or that we don't know what the position is of the city as to whether such an agreement is necessary, right? That's right, and the district court didn't go so far either as to say . . . It said, specifically, the district court said that we don't . . . I don't go so far as to say a joint task force is necessary because there's no precedent requiring that. Thank you very much. Thank you. Before you start, can I ask a question . . . Yes, Your Honor. . . . about your position about the orders of protection? Yes, Your Honor. Do you agree that as to those documents, as opposed to the internal documents, the DD-5s and the criminal complaints, that the district court was entitled to take notice of the orders of protection? No, all those documents were sealed upon the disposition, upon the dismissal of the actions. But I'm talking about the order of protection. Right. So the orders of protection were sealed? They were all sealed because the case was ultimately dismissed. But did you make that argument to the district court? Yes, all these . . . About that they were sealed and so the district court . . . Did the district court reconsider its order because the documents were sealed? No, there was no motion to reconsider filed, but these arguments were made. Did you yourself also quote from the orders of protection in your complaint? We referred to the order of protection, but we didn't rely on the order of protection. Your adversary says that there was language quoted from the order of protection, in particular the exemption in the order of protection. If that is so, maybe you question that, why wasn't it appropriate for the district court to look at the entire order? Because the complaint is all that can be considered on a motion to dismiss, and it wasn't relied upon. Not if it's relying on a document. The district court's entitled to look at the entire document in that case. Why is that wrong? Because the fact that it was incidental, I don't think it was ever disputed at all, and there's no reason why the order of protection needed a duplicative document that says exactly what the complaint says doesn't require consideration. If the complaint already says what the order of protection says, then there's no reason why the district court needs to look at that specific document to confirm a fact that the complaint already says is true. In that situation, there's no prejudice either by the fact that they looked at it. Right, that wasn't the only document that was considered. I mean, it was a whole host of documents that were sealed from his criminal case because all three of his criminal cases were all dismissed, and so all those documents were sealed, and my client would not rely on documents that are uncharged and that he claims is false anyway, so he couldn't have relied on those documents, and the order of protection is just one of the many documents that the district court relied on. Thank you. Thank you, Mr. Do you have something else to add? Yes. Go ahead. Lastly, Your Honor, I come from that same hometown as you. Excuse me? I come from the same hometown of the 109th Precinct, and what happened was Flushing, Queens. Yes, and what happened Downtown Flushing. Yes, downtown Flushing, and I grew up there. They had our police athletic league. Right. We played baseball under the auspices of the 109th Precinct. Go ahead. And I'm sorry to say that the police, during this time frame, did not act as the Constitution requires them to act. My client was in the cell phone business at a very early stage when cell phones just started. His girlfriend, Tan, saw that it was a profitable business and tried to obtain orders of protection through criminal court to keep him away from the store. In order to do this, she bribed Detective Z as well as other officers. What we have are demo line. We have activated cell phones, so if we had more discovery, because discovery in this case was very limited, we would be able to uncover more of the bribery and the conspiracy that had happened. Commanding officer of the 109th Precinct actually took my client's keys to the store away from him and gave it to Tan. The only thing that the customs agents were searching for was nothing that they wanted but really for Z to seize the passport and the laptop in order to return the laptop to Tan because he was acting for Tan. So that was the purpose. The only purpose of the search was to obtain his passport to give him trouble as well as to obtain the laptop that Tan says was hers from him. So that was the only reason why the search at the airport even happened. Thank you, Ms. Wang, very much. We reserve the decision and we are adjourned. Thank you.